Michael Yesk (SB#130056)
Megan Dailey (SB#221574)
Yesk Law
70 Doray Dr., Suite 16
Pleasant Hill, CA 94523
Telephone: 925-849-5525
m.yesklaw@gmail.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NUMA BARNES, AN INDIVIDUAL, | ) Case No: 3:13-cv-03227-SC |
| | ) |
| | ) PLAINTIFF'S OPPOSITION TO MOTION |
| | ) TO DISMISS PLAINTIFF'S COMPLAINT |
| PLAINTIFF, | ) FOR FAILURE TO STATE A CLAIM |
| | ) |
| | ) |
| VS. | ) Date:  September 13, 2013 |
| | ) Time: 10:00 a.m. |
| | ) Ctrm:  1 – 17th Floor |
| HOMEWARD RESIDENTIAL, INC.; | ) Judge:  Hon. Samuel Conti |
| DEUTSCHE BANK NATIONAL TRUST | ) |
| COMPANY; MORTGAGE ELECTRONIC | ) |
| REGISTRATION SYSTEMS, INC.; POWER | ) |
| DEFAULT SERVICES, INC.; FIDELITY | ) |
| NATIONAL TITLE COMPANY; AND | ) |
| DOES 1 THROUGH 100, INCLUSIVE, | ) |
| | ) |
| | ) |
| DEFENDANTS. | ) |

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# **Table of Contents**

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iii

   Cases. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .iv

   Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..iv

   Other Authorities………………………………………………………… iv

   Memorandum of Points and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Factual Background. . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . .1

Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ..... ……..2

   I.     Legal Standard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .....1

   II.    Res Judicata Does Not Bar Plaintiffs' Action…………………………………3

   III.   Plaintiff Has Standing to Dispute Foreclosure and Violation of Pooling and Servicing

       Agreement ……………………………………………..……………………5

   IV.   Plaintiff is Excepted from the Tender Requirement………………………………...7

   V.    Plaintiff Stated Sufficient Facts for Breach of Contract and Implied Agreement…9

   VI.   Plaintiffs State Facts Sufficient to Support a Cause of Action for Slander of Title…10

       A. Defendants Recorded False Documents…………………………………10

       B. Defendants' Actions Were Not Privileged, and were Malicious Due to Lack of

          Reasonable Grounds for Belief in the Truth of the Publication………………...12

       C. Plaintiff is Prejudiced by Defendants' False Recordations and Has Suffered

          Pecuniary Damages as a Result …………………………………………13

   VII.  Plaintiff States Sufficient Facts to Support Their Cause of Action For Wrongful

       Foreclosure Under California Law …………………………………………15

       A. Foreclosure of Plaintiff's Property is Illegal Because the Trustee is not the True

          Trustee under the Deed of Trust………………………………………………15

       B. Plaintiffs Were Prejudiced By This Wrongful Foreclosure……………………16

VIII.   Defendants' Demurrer to Plaintiff's Cause of Action for Violations of California

        Civil Code Section 2923.5 and the FDCPA Should Be Overruled…………………17

IX.     Plaintiff Have Standing Under Federal Law (That is Not Time Barred) And Have

        Stated Sufficient Facts Under TILA ……………………………………………18

X.      Plaintiffs State Facts Sufficient to Constitute a RICO Violation…………………19

XI.     Plaintiff States Facts Sufficient to Support a Cause of Action for Unfair and

        Deceptive Business Act Practices…………………………………………………..21

XII.    Conclusion…………………………………………………………………………22

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**Table of Authorities**

**Cases**

Angels Inc. v. Stuart Wright Mortgage, Inc. (2001) 85 Cal.App.4th 1279, 1286 . . . . . . . . . . . .9

Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Baypoint Mortgage Corp. v. Crest Premium Real Estate Trust (1985) 168 Cal.App.3d. 818 . . .10

Bisno v. Sax 175 Cal.App.2d 714 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Calvo v. HSBC Bank USA, N.A. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Carpenter v. Longan, 83 U.S. 271, 274, 21 L. Ed. 313 (1872). . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Dimock v. Emerald Properties, LLC (2000) 81 Cal. App. 4th 868, 97 Cal. Rptr. 2d 255 . . . .8

Gomes v Countrywide Home Loans, 192 Cal. App. 4th 1149, 1155 (2011) . . . . . . . . . . . . . . 6

In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007) . . . . . . . . . . . . . . . . . . . . .4

In re Kang Jin Hwang, 393 B.R. 701, 712 (C.D. Cal. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

In re Leisure Time Sports, Inc. 194 B.R. 859, 861 (9th Cir. 1996 . . . . . . . . . . . . . . . . . . . . . . . ...2

Karlsen v. American Savings & Loan Assn. (1971) 15 Cal.App.3d 117 . . . . . . . . . . . . . . . . . 7, 8

Kelley v. Upshaw, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

Mitra v. Cote (1982) 127 Cal.App.3d 888, 894 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Onofrio v. Rice (1997) 55 C.A.4th 413, 424 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ... 7

Phyllis Horace v. La Salle Bank National Association, Et AI, 57-cv-2008-00362.00 . . . . . . .9

Riegel v. Central Hanover Bank & Trust Co., 266 A.D. 586, 42 N.Y.S.2d 657, 660 (1943). . . 4

Sacchi v. Mortgage Electronic Registration Systems, Inc., 2011 WL 2533029, 8 (C.D. Cal. 2011)) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

Swealth v. Foreclosure Co. (1985) 166 Cal.App.3d 273, 278 . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Tamburri v. Suntrust Mortgage, Inc., 2011 WL 6294472 at *10-11 (N.D. Cal. 2011) . . . . . . 7

Trout v. Trout (1934) 2220 Cal. 652, 656 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ...9

Us. BANK Nat. Ass'n v. Ibanez (2011) 941 N.E.2d 40 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Wanger v. EMC Mortgage Co. (2002) 103 Cal.app.4th 1125 . . . . . . . . . . . . . . . . . . . . . . . . . .9

Wells Fargo N.A. v. La Jolla Group (2005) 129 Cal.App.4th 706 . . . . . . . . . . . . . . . . . . . . . .9

## **Statutes**

Cal. Civ. Code § 2924(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. 6

Cal. Civ. Code § 2932.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Federal Rules of Civil Procedure, Rule 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .....5

Federal Rules of Civil Procedure, Rule 65 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

## **Other Authorities**

Black's Law Dictionary. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Memorandum of Points and Authorities**

**Introduction**

Plaintiff NUMA BARNES ("Plaintiff") herein submits her PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM for failure to state a claim by pleading facts insufficiently.

**Factual Background**

On or August 16, 2006, Plaintiff recorded a Deed of Trust ("DOT") in the Contra Costa County Recorder's Office as instrument no. 259052 ("Subject Property") against 30 Vernal Court, Alamo, CA 94507 to secure a Promissory Note in favor of American Brokers Conduit ("ABC") in the amount of $1,300,000.

On or around September 22, 2006, ABC securitized and sold Plaintiff's DOT to a real-estate-mortgage-investment-conduit ("REMIC") trust, the American Home Mortgage Assets Trust 2006-5, Mortgage-Backed Pass-Through Certificates, Series 2006-5 ("AHMA 2006-5 Trust"). After this sale, ABC retained solely the servicing rights to Plaintiff's loan, according to Plaintiff's Property Securitization Report, a true and correct copy of which is attached hereto as Exhibit A. See Ex. A, pp. 20-21.

On October 20, 2011, an Assignment of Deed of Trust was recorded in the Contra Costa County Recorder's Office by MERS purportedly transferring the beneficial interest in Plaintiff's Deed of Trust to DBNTC as Trustee for the AHMA 2006-5 Trust.

On November 9, 2011, Fidelity recorded a Notice of Default and Election to Sell Under Deed of Trust ("NOD") in the Contra Costa County Recorder's Office, thereby initiating the process of foreclosing on Plaintiff's home.

On or about February 15, 2012, Fidelity, issued a Notice of Trustee's Sale setting a Trustee's Sale signaling the final stage of the foreclosure process.

On February 15, 2012, a Substitution of Trustee was recorded in the Contra Costa County Recorder's Office. Through this document, AHMSI as Attorney in Fact for DBNTC as Trustee

1  for the AHMA 2006-5 Trust purports to make a substitution of Trustee under the Deed of Trust

2  in favor of Power Default Services ("PDS").

3       AHMSI and DBNTC's statement was intentionally false and misleading in that DBNTC

4  as Trustee was not the purported "beneficiary" due to the prior unperfected transfer to DBNTC

5  as Trustee for the AHMA 2006-5 Trust.  This document was also signed by April King, this time

6  as Assistant Secretary of AHMSI.  Only the lender (in this case ABC or its assigns the certificate

7  holders of the AHMA 2006-5 Trust) has the power and authority to substitute the trustee under

8  the Deed of Trust, pursuant to a the terms of the DOT for the Subject Property pertaining to the

9  substitution of a trustee; and in any case the foreclosure was being conducted by Fidelity, which

10 lacked the power of sale, due to the fact Fidelity was purporting to act on behalf of DBNTC as

11 Trustee, which was transferred at most, servicing rights due to the September 22, 2006

12 securitization.

13      Homeward continued to collect mortgage payments from Plaintiff as a servicer to

14 Plaintiff's loan, without authorization; violating the Deed of Trust and the Pooling and Servicing

15 Agreement ("PSA") for the securitized to which ABC transferred its beneficial interest and to

16 which Plaintiff was a third-party beneficiary.

17      **Law and Argument**

18   **I.    Legal Standard**

19      A Rule 12(b)(6) Motion to Dismiss tests only whether the Plaintiff's Complaint states

20 sufficient facts to state a plausible claim for relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

21 544, 557 (2007).  A complaint which contains sufficient factual allegations "to raise a right to

22 relief above the speculative level" will survive a motion to dismiss.  *Id.*  A complaint must state a

23 claim that is facially plausible, requiring facts showing more than a sheer possibility that a

24 defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  "A claim has

25 facial plausibility when the plaintiff pleads factual content that allows the court to draw the

26 reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In evaluating

whether a complaint meets this standard, the court is not required to take the plaintiff's legal conclusions as true, but must take the plaintiff's factual allegations as true, and then "determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

## II.     Res Judicata Does Not Bar Plaintiffs' Action

Plaintiff's claims in Contra Costa Superior Court Case No. MSC12-02003 were dismissed due to Plaintiff abandoning her claim and not filing an amended complaint within the time allowed.    Plaintiff was however, granted leave to amend on December 11, 2012. Therefore, Defendants cannot argue that a final judgment was entered in the Superior Court Action because this Order pertained to allegations in the Complaint and was not a final judgment on the merits.  Although case law such as *Boeken v. Philip Morris USA, Inc.,* 48 Cal.4th 788, 797 (2010) and *Rice v. Crow,* 81 Cal.App.4th 725, 733-734 (2000) demonstrate the application of res judicata, these cases do not pertain to causes of action such as Plaintiff's derivative causes of action for violations of Business and Professions Code section 17200 and Wrongful Foreclosure, especially given the fact that in the Superior Court Action, Plaintiffs were given leave to amend. Therefore, the facts are wholly different from those in *Boeken* where res judicata was found to apply to successive claims for loss of consortium and wrongful death in which there was a dismissal with prejudice and *Rice* where the doctrine was not found to apply.  Plaintiff maintains neither res judicata nor collateral estoppel applies to the December 11, 2012 Order and subsequent Judgment in the Superior Court Action sustaining the defendants' demur without leave to amend Plaintiff's Slander of Title cause of action either because there was no dismissal with prejudice as to the action, because Plaintiff was allowed leave to amend, and because there was no final decision on the merits. Thus, res judicata, and the above-mentioned cases, are wholly inapplicable to Plaintiff's claims in this action.

The general rule is that a plaintiff who has prosecuted one action against a defendant and obtained a valid final judgment is barred by res judicata from prosecuting another action against

the same defendant where (a) the claim in the second action is one which is based on the same factual transaction that was at issue in the first; (b) the plaintiff seeks a remedy additional or alternative to the one sought earlier; and (c) the claim is of such a nature as could have been joined in the first action. Underlying this standard is the need to strike a delicate balance between the interests of the defendant and of the courts in bringing litigation to a close and the interest of the plaintiff in the vindication of a just claim.

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that federal courts "give a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered. " *Migra v. Warren City School Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984).

The difference between the two concepts has been succinctly described by Justice Potter Stewart: The federal courts have traditionally adhered to the related doctrines of res judicata [claim preclusion] and collateral estoppel [issue preclusion]. Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from re-litigating issues that were or could have been raised in that action.  Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case.  As this Court and other courts have often recognized, res judicata and collateral estoppel relieve parties of the costs and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication.  *Allen v. McCurry*, 449 U.S. at 94. The collateral estoppel bar is inapplicable when the claimant did not have a "full and fair opportunity to litigate" the issue decided by the state court.  *Id*. at 101.

This is the case here, and even if it were not, exceptions do apply.  First, consent or tacit agreement is clear justification for splitting a claim. Restatement (Second) of Judgments § 26(1)(a), and comment a (1982).  Because a primary purpose of claim preclusion is to protect defendants from being harassed by repetitive actions based on the same claim, the rule need not be enforced where the State and County have implicitly consented to the splitting of claim under

state and federal laws. *See Rennie*, 294 Or. at 329 n. 9 (citing 18 Charles A. Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure S 4415 at 124-125; and Annot., 40 A.L.R.3d 108 (1971)).

### III.    Plaintiff Has Standing to Dispute Foreclosure and Violation of Pooling and Servicing Agreement

Plaintiff has standing to sue Defendants.  Plaintiff does not claim any benefits to or seek any adjudication of the investors' claims regarding the failed securitization.  Rather, Plaintiff's claims are limited to their own interests - protection of their property rights.

The limitation on agency powers is codified in California law.  Trustee's powers are limited by the trust documents that enumerate their authority.  CAL. PROB. CODE § 16200 states that A trustee has the following powers without the need to obtain court authorization: (a) The powers conferred by the trust instrument.  Therefore, there is no way to tell whether a Trustee has the authority to act or not unless one examines the Trust Document, in this case, the Pooling and Servicing Agreement.

Courts have recognized a borrower's right to bring claims challenging a party's interest under a deed of trust.  *See Vogan v. Wells Fargo Bank, N.A. et al*, 2011 WL 5826016, *7; *Schafer v. CitiMortgage, Inc.,* No. CV 11-03919 ODW, 2011 WL 2437267, *4 (C.D. Cal. June 15, 2011); *Sacchi v. Mortgage Electronic Registration Systems, Inc.,* No. CV 11-1658 ARM:, 2011 WL 2533029, at *5 (C.D. Cal. June 24, 2011) ("It is true, as Defendants repeatedly assert, that California Civil Code § 2924, et seq. authorizes non-judicial foreclosures in this state. It is not the case, however, that the availability of a non-judicial foreclosure process somehow exempts lenders, trustees, beneficiaries, servicers, and the numerous other (sometimes ephemeral) entities involved in dealing with Plaintiffs from following the law."). Indeed, one of the very purposes of California's non-judicial foreclosure statutes is "to protect the debtor/trustor from wrongful loss of the property." *Fontenot v. Wells Fargo Bank, N.A.,* 198 Cal. App. 4th 256, 270 (2011) (internal quotations omitted).

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM- 5

1    There must be a determination of whether or not the MBS Trust, pursuant to the PSA, has

2    standing to assert to be Plaintiff's creditor.  In addition, the injury claim is on behalf of discrete

3    individuals here -Plaintiff- and no other. For these reasons, Plaintiff has standing to sue

4    Defendants.  Defendants' Assignment of Deed of Trust, Exhibit B to the Request for Judicial

5    Notice in Support of Defendants' Motion to Dismiss Complaint For Failure to State a Claim

6    demonstrates the need for this determination because there was no assignment.

7        *Gomes v. Countrywide*, 192 Cal. App. 4th 1149 (2011), held that California Civil Code§

8    2924(a)(1) does not "provide for a judicial action to determine whether the person initiating the

9    foreclosure process is indeed authorized."  *Id*. at*1155. But the issue in *Gomes* was not whether

10   the wrong entity had initiated foreclosure; rather, the issue was whether the company selling the

11   property in the non-judicial foreclosure sale (MERS) was authorized to do so by the owner of the

12   promissory note.  See id. at 1155.  That is, *Gomes* involved a challenge to whether an agent had

13   the authorization of its principal, who was the undisputed beneficiary under the deed of trust, to

14   initiate foreclosure.  It was not, as here, a challenge to the principal's claimed status as

15   beneficiary under the deed of trust.

16       Plaintiff is not and has not alleged that Plaintiff's Deed of Trust or any contract, or legal

17   authority prevents American Brokers Conduit and other original lenders from securitizing deeds

18   of trust by retaining or severing servicing rights from mortgage notes and deeds of trust and

19   selling the mortgage notes and deeds of trust to investors.

20       Former CC §§ 2258 and 2267 (limiting trustee's authority to directions and declarations

21   in trust instrument), were not contravened by the rule allowing the trustee the authority to adopt

22   measures and to do acts that are not specified in the instrument but that are implied in its general

23   directions and are reasonable and proper means for making the instrument effectual. *Botsford v.*

24   *Haskins & Sells* (1978, Cal App 1st Dist) 81 Cal App 3d 780, 146 Cal Rptr 752, 1978 Cal App

25   LEXIS 1623.  In determining extent of discretion conferred on trustees by trustor, court must

26   look to instrument creating trust and resolve question from that instrument alone. *Estate of Gross*

(1963, Cal App 1st Dist) 216 Cal App 2d 563, 31 Cal Rptr 281, 1963 Cal App LEXIS 2054.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM- 6

Deviation from the terms of a trust is not justified by the mere fact that such deviation would be advantageous to the beneficiaries or would offer an expedient solution to problems of trust management. *Crocker-Citizens Nat'l Bank v. Younger* (1971) 4 Cal 3d 202, 93 Cal Rptr 214, 481 P2d 222, 1971 Cal LEXIS 307, 56 ALR3d 1228.  A power to appoint trustees conferred by the terms of a trust can be exercised only under the circumstances and in the manner provided by those terms. *Crocker-Citizens Nat'l Bank v. Younger* (1971) 4 Cal 3d 202, 93 Cal Rptr 214, 481 P2d 222, 1971 Cal LEXIS 307, 56 ALR3d 1228.   Authority of trustee to transfer trust property depends upon terms of instrument by which trust is created, and where trustee is expressly empowered to sell, his deed vests title in purchaser. *Huntoon v. Southern Trust & Commerce Bank* (1930, Cal App) 107 Cal App 121, 290 P 86, 1930 Cal App LEXIS 219.

Plaintiff alleged that the securitization and foreclosure process, in this instance, was mishandled as will be set forth below and therefore prevents Defendants from enforcing Plaintiff's Deed of Trust because it is too late to correct these defects including violations of the California Civil Code and federal law, breaches of Plaintiff's Deed of Trust and the Pooling and Servicing Agreement ("PSA") for the securitized trust, and use of robo-signers.   Therefore, Plaintiff's Deed of Trust is void and unenforceable.

### IV.    Plaintiff is Excepted from the Tender Requirement

Plaintiff is not required to make an offer of tender.  There are four exceptions to the tender rule.  *See Lona v. Citibank*, 202 Cal.App.4th 89 (2011).  These exceptions include:

1) If the borrower's action attacks the validity of the underlying debt, a tender is not required since it would constitute an affirmation of the debt.
2) A tender will not be required when the person who seeks to set aside the trustee's sale has a counter-claim or set-off against the beneficiary.
3) A tender may not be required where it would be inequitable to impose such a condition on the party challenging the sale.
4) No tender will be required when the trustor is not required to rely on equity to attack the deed because the trustee's deed is void on its face.  *Id.* at pp. 112-113.

Defendants claim that Plaintiff lacks standing to challenge the foreclosure of his home because they have failed to tender the full amount due under the note.  Without Plaintiff making such an offer or payment, Defendants argue that the tender rule acts as a complete bar against all of Plaintiff's causes of action, and thus all their claims should be dismissed.  However, the requirement that a borrower seeking to set aside a foreclosure sale must first tender the full amount of the debt is not an absolute rule.  In the instant case, Plaintiff is not precluded from pursuing their causes of action for failing to tender because it would be inequitable to require tender.

A cause of action to enjoin or set aside a trustee's sale is an action in equity.  Miller & Starr California Real Estate 3d 10:212; *Tamburri*, 2011 WL 6294472 at *3.  As courts have recognized, a rigid tender rule would often entirely preclude homeowners from challenging wrongful foreclosures.  *Sacchi*, 2011 WL 2533029 at *9.  Like the Plaintiff here, most homeowners do not have the funds necessary to pay off the entire balance of their loans at one time.  If the tender rule was without exception, homeowners in danger of losing their home through, "error or malfeasance . . . would be unable to hold on to this most precious possession [home].  This would be a grossly inequitable result and would permit entities to foreclose on properties without impunity." *Sacchi*, 2011 WL 2533029 at *9.

To avoid this result, and contrary to what Defendant argues, California courts have recognized that an offer of "tender may not be required where it would be inequitable to do so." *Onofrio v. Rice*, 55 Cal. App. 4th 413, 424 (1997) (affirming trial court's grant of relief to plaintiff on rescission claim although plaintiff failed to tender).  See also *Sacchi*, 2011 WL 2533029 at *10; *Tamburri*, 2011 WL 6294472 at *3; *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 291 (1911) (recognizing "cases holding that, where a party has the right to avoid a sale, he is not bound to tender any payment in redemption" adding that, "[w]hatever may be the correct rule, viewing the question generally, it is certainly not the law that an offer to pay the debt must be made, where it would be inequitable to exact such offer of the party complaining of the sale").

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM- 8

1    In the instant case, as in *Sacchi*, and *Tamburri*, Plaintiff should not be required to make a

2    full tender offer because they are challenging that Defendants lacked the legal power to foreclose

3    and requiring tender under these circumstances would be inequitable. *See In re Salazar* 448 B.R.

4    814, 819 (Bankr.S.D.Cal. 2011) ("If U.S. Bank was not authorized to foreclose the [Deed of

5    Trust] under California Civil Code section 2932.5, the foreclosure sale may be void, and *Salazar*

6    would not need to tender the full amount of the Loan to set aside the sale."). Thus, the tender

7    rule does not apply here as requiring compliance with the tender rule in this context is

8    inequitable.

9

10        **V.        Plaintiff Stated Sufficient Facts for Breach of Contract and Implied**
     **Agreement**

11

12        The NOD is false and in violation of the AHMA 2006-5 securitized trust. Plaintiff's

13    securitization audit indicates that DBNTC is in breach of the PSA for the AHMA 2006-5 Trust

14    and in violation of IRS Code Sec. 860G (2004, as amended).

15        The securitized trust must have received the Assignment of the Beneficial Interest of the

16    Deed of Trust within 90 days of the close of the Trust, pursuant to the PSA for this Trust. In this

17    case MERs never recorded an Assignment of Deed of Trust, years after the securitization sale in

18    2006 took place. Therefore, Fidelity was not acting on behalf of the true beneficiary in executing

19    the NOD because Fidelity had no way of knowing who the true beneficiaries were, the certificate

20    holders of the AHMA 2006-5 Trust, at the time of the recording of the NOD on November 9,

21    2011.

22        Plaintiff's Deed of Trust required the trustee to record the NOD. Plaintiff's Deed of

23    Trust states: "If Lender invokes the power of sale, Lender shall execute or cause Trustee to

24    execute a written notice of the occurrence of an event of default and of Lender's election to

25    cause the property to be sold. Trustee shall cause this notice to be recorded in each county in

26    which any part of the Property is located. [] Trustee shall give public notice of sale . . . ." See

     RFJN Ex. A, p. 13, ¶ 22. Plaintiff's Deed of Trust provides that the Lender may appoint

     PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
     FAILURE TO STATE A CLAIM- 9

successor trustees.  See RFJN Ex. A, p. 13, ¶ 24.  This never happened in the instant matter.  In this case the NOD was recorded by Fidelity who could not have been the true trustee because Fidelity was not appointed by the true beneficiary.

The agency on behalf of DBNTC is invalid for the aforementioned reasons, therefore, in recording the foreclosure documents including the NOD and the Notice of Trustee's Sale, Defendants breached the PSA for the AHMA 2006-% securitized trust as well as the above-referenced provisions of Plaintiff's Deed of Trust.

**VI.  Plaintiff States Facts Sufficient to Support a Cause of Action for Slander of Title**

The elements of a claim for slander of title are: "1) a publication, 2) which is without privilege or justification, 3) which is false, and 4) which causes direct and immediate pecuniary loss."  *Manhattan Loft, LLC v. Mercury Liquors, Inc*. (2009) 173 Cal. App. 4th 1040, 1051.

**A.  Defendants Recorded False Documents**

Defendants maintain that Plaintiff's title was not slandered because Plaintiff did not meet the publication requirement to the extent that recorded foreclosure notices are privileged communications.  Defendants also maintain that Plaintiff has not established falsity or reliance by third parties causing pecuniary loss.  Contrary to Defendants contention, however, false documents were recorded, thus disparaging Plaintiff's title.

The NOD recorded on November 9, 2011 is invalid because it was required to have been recorded by the trustee  on behalf of the beneficiary under Plaintiff's Deed of Trust, the Lender's interest had been transferred due to the prior securitization.

Shortly after Plaintiff's DOT was recorded in 2006, as was its customary business practice, American Brokers Conduit ("ABC") securitized and sold Plaintiff's Deed of Trust to a real-estate-mortgage-investment-conduit ("REMIC") trust, ("the Trust").  After this sale, ABC retained solely the servicing rights to Plaintiff's loan.  There was no Assignment of Deed of

Trust and there could be no legal assignment because the REMIC could not legally accept the asset without violating the IRS rules for REMICS that the REMIC specifically accepted in the Prospectus and Pooling and Servicing Agreement.

The facts are clear, DBNTC claimed to have acquired an asset from ABC at a time when ABC only owned, at the most, servicing rights.  Because Defendants did not follow the Pooling and Servicing Agreement and violated the Trust's REMIC status, the Trust did not and could not legally acquire the asset, even if it paid full value to ABC for it.

The Notice of Default and Notice of Sale are also false and invalid for the same reasons.

DBNTC was not in possession of the beneficial interest in Plaintiff's Deed of Trust and Fidelity was not acting at the direction of the true beneficial interest holder under the terms of Plaintiff's Deed of Trust (or Homeward as Servicer) due to the securitization by ABC in 2006. The NOD and Notice of Trustee's Sale were false because the sale was executed by Cal Reconveyance, an entity that was not the true trustee.  See *Dimock v. Emerald Properties, Inc*. 81 Cal. App. 4th 868, 876 (2000) (holding Trustee's Sale void where it was completed by an entity who was not in fact the trustee, as the original trustee completed the sale after there had been a valid substitution of trustee).

The NOD was also false because Defendants violated California Civil Code Section 2923.5 because they failed to contact Plaintiff, in person or by telephone, at least 30 days prior recording the Notice of Default recorded on November 9, 2011.  There was no statement contained in the Notice of Default recorded by Fidelity stating that someone tried with due diligence to contact the borrowers and no one did attempt to contact the borrowers as required by the California Civil Code § 2923.5, nor was Plaintiff ever contacted.  Defendants failed to exercise due diligence in attempting to contact Plaintiff as required by Section 2923.5, and DBNTC's recordation of the Notice of Default which did not comply with Section 2923.5 was thus unfair and unlawful.

Plaintiff further alleges that Defendants' failure to comply with the Notice and Contact requirements of Section 2923.5 renders the Notice of Default and all subsequent proceedings

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM- 11

based on said Notice, including any subsequent Notice of Trustee's Sale, and subsequent Trustee's Deed Upon Sale invalid and void.  See *Mabry v. Superior Court* (2010) 185 Cal. App. 4th 208, 236-37 (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded).

Plaintiff also cites to the requirement the statute places on Defendants, that any attempts at contact under § 2923.5 be made with "due diligence."  Here, Plaintiff clearly states there were no attempts made with due diligence and there was no contact under § 2923.5 during the time Plaintiff was residing in the Subject Property and presumably at a location of which Defendants were apprised.

Thus, Defendants recorded false documents when they recorded the NOD and Notice of Trustee's Sale in the official records of Contra Costa County.  The recording of these documents cast doubt on Plaintiff's title.  Plaintiff has suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and form having their home wrongfully sold.

**B.  Defendants' Actions Were Not Privileged, and were Malicious Due to Lack of Reasonable Grounds for Belief in the Truth of the Publication**

While Defendant correctly notes that the qualified common interest privilege of California Civil Code section 47(c)(1) applies to the documents required by the non-judicial foreclosure scheme, this privilege is not absolute.  Instead, the privilege only protects communications made without malice.  In this context, "malice is defined as actual malice, meaning that the publication was motivated by hatred or ill will towards the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."  *Kachlon v. Markowitz* (2008) 168 Cal. App. 4th 316, 336  (citations omitted, emphasis in original).  Here, Defendants DBNTC and Fidelity acted with malice by recording the NOD while aware that Fidelityy was no longer acting on behalf of the true beneficial interest holder and knowing that neither DBNTC could not

be the true beneficial interest holder of Plaintiff's Deed of Trust.  DBNTC then acted with malice by relying on the false NOD, to record the false Notice of Trustee's Sale.  Acting with "[m]ere inadvertence, or careless blundering" is insufficient to prove malice, but, here Defendants acted with malice by recording these documents in reckless disregard of the facts underlying this foreclosure process.  *Id.* at 344.  Moreover, contrary to Defendants' contention Plaintiff need not have pled a cause of action for fraud in order to maintain their cause of action for slander of title as each is a separate and distinct cause of action.  At this stage, Plaintiff has pled sufficient facts to show that a demurrer on the basis of privilege is unwarranted.

### C. Plaintiff is Prejudiced by Defendants' False Recordations and Has Suffered Pecuniary Damages as a Result

The recording of these documents cast doubt on Plaintiff's title.  Plaintiff has suffered a direct financial loss as a result of the recordation of these false documents because they were forced to seek legal counsel to protect their interest in the Subject Property and from having their home wrongfully sold.

Plaintiff alleged the detrimental impact to the vendibility of Plaintiff's property stating pecuniary damages sustained by Plaintiff as a result of the wrongfully recorded foreclosure documents and the fraudulent billings.  Plaintiff alleged as follows:

> "The recording of the foregoing documents made it necessary for Plaintiff to retain attorneys and to bring this action to cancel the instruments casting doubt on Plaintiff's title.  Therefore, Plaintiff is entitled to recover attorneys' fees and costs incurred in cancelling the instrument.  The exact amount of such damages is not known to Plaintiff at this time, and Plaintiff will move to amend this complaint to state such amount when the same becomes known, or on proof at the time of trial."  Complaint, pp. 8-9, ¶ 34.

The Court of Appeal has held that at least in cases such as this one where title was disparaged in a recorded instrument, attorney fees and costs necessary to clear title or remove the doubt case on it by defendant's falsehoods are, by themselves, sufficient pecuniary damages for

1  purposes of a cause of action for slander of title. *Sumner Hill Homeowners' Assn., Inc. v. Rio*

2  *Mesa Holdings, LLC* (2012) 205 Cal.App.4th 999.

3        The Court also noted that courts in other jurisdictions have directly confronted this issue

4  and have concluded that attorney fees incurred in removing the effects of slander of title are

5  recoverable as special damages even in the absence of proof of an impairment of vendibility.

6        In this matter, Plaintiff assert a claim of wrongful foreclosure on the basis of the totality

7  of allegations in the Complaint including facts alleged and pertaining to the false Deed of Trust,

8  and foreclosure documents which constitute violations of the California Civil Code.

9        In the instant matter, Plaintiff was prejudiced by Defendants' assertion of the right to

10  foreclose and maintaining the false Deed of Trust recorded against Plaintiff's property because

11  the false Deed of Trust is the foundation for Defendants' attempts to complete a wrongful

12  foreclosure of Plaintiff's property and the foreclosure documents could simply be re-recorded

13  should Plaintiffs' lawsuit be dismissed.  Without the improper and false Deed of Trust, these

14  Defendants' would not have initiated this foreclosure.  As the Court stated in *Tamburri*, 2011

15  WL 6294472 at *14, the fact that the wrong party initiated a foreclosure demonstrates prejudice

16  to the Plaintiff:

17        California law requires strict compliance with non-judicial foreclosure statutes.  *Ung v.*

18  *Koehler*, 135 Cal.App.4th 186, at 202–03, 37 Cal.Rptr.3d 311 (2005) ("The statutory

19  requirements must be strictly complied with, and a trustee's sale based on statutorily deficient

20  notice of default is invalid."). California courts have acknowledged that notices of default serve a

21  vital purpose as the "crucial first step in the foreclosure process."  *Mabry v. Superior Court*, 185

22  Cal.App.4th 208, 221, 110 Cal.Rptr.3d 201 (2010).  Thus, assuming prejudice is required, the

23  threat of foreclosure by the wrong party would certainly be sufficient to constitute prejudice to

24  the homeowner because there is no power of sale without a valid notice of default.  *Castillo v.*

25  *Skoba*, 2010 WL 3986953 at*2.

26        Plaintiff has suffered damages as a direct and proximate result of Defendants' actions as

herein described as they have suffered a cloud upon their title(s) and pecuniary damages.  These

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR
FAILURE TO STATE A CLAIM- 14

damages are irreparable should the Defendants' void Deed(s) of Trust be enforced.  Plaintiff seeks an injunction because real property is considered unique in California, and monetary damages are deemed inadequate to compensate Plaintiff for the loss thereof.  *Stockton v. Newman* (1957) 148 Cal. App. 2d 558, 564.

Because the falsely recorded documents made it necessary for Plaintiff to retain attorneys and to bring this action to cancel the instruments casting doubt on Plaintiff's title, Plaintiff is also entitled to recover attorneys' fees and costs incurred in cancelling the instrument.

## VII.    Plaintiff States Sufficient Facts to Support Their Cause of Action For Wrongful Foreclosure Under California Law

Contrary to Defendant's contention, Plaintiff does have standing to challenge the completed foreclosure sale of his home as acknowledge by the court in *Lona*.  In *Lona*, the court set forth the elements of an equitable cause of action to set aside a foreclosure sale:   the trustee or mortgagee caused an illegal, fraudulent, or willfully oppressive sale of real property pursuant to a power of sale in a mortgage or deed of trust; (2) the party attacking the sale (usually but not always the trustor or mortgagor) was prejudiced or harmed; and (3) in cases where the trustor or mortgagor challenges the sale, the trustor or mortgagor tendered the amount of the secured indebtedness or was excused from tendering. 202 Cal. App. 4th at 104.

### A.    A Foreclosure of Plaintiff's Property is Illegal Because the Trustee is not the True Trustee under the Deed of Trust

Here, a foreclosure and sale of the Subject Property allegedly pursuant to the power of sale under Plaintiff's Deed of Trust is oppressive and illegal because the NOD was recorded by Fidelity who is not the true Trustee because the original Lender sold the beneficial interest to the REMIC in  2006.  Thus, DBNTC could not have acceded to the beneficial interest in Plaintiff's loan because it was previously transferred to the REMIC.

Since there is no other legal document purporting to convey the beneficial interest to DBNTC, DBNTC was not the "present beneficiary" when the NOD was recorded in 2009.

Therefore, the NOD failed and is void.  Because DBNTC, Homewad and Fidelity acted illegally to sell the Subject Property under the Deed of Trust when in fact Fidelity was not the Trustee for the true beneficial interest holder, any sale would be void.  Cal. Civ. Code § 2934a; *Dimock v. Emerald Properties, Inc*. 81 Cal. App. 4th 868, 876 (2000) (holding Trustee's Sale void where it was completed by an entity who was not in fact the trustee, as the original trustee completed the sale after there had been a valid substitution of trustee).

### B.  Plaintiff Was Prejudiced By This Wrongful Foreclosure

Defendants' actions in wrongfully foreclosing on Plaintiff's property in violation of the statutory scheme governing non-judicial foreclosures were prejudicial and harmful to Plaintiff because these actions deprived Plaintiff of the protection of these important statutes intended to protect borrowers and to ensure they do not wrongfully lose their homes.  Allowing a foreclosure completed in violation of the statutory scheme would render these statutes ineffective for the very purpose for which they enacted.  As the court stated in *Moeller v. Lien*, 25 Cal. App. 4th 822, 830 (1994):

> The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser.

The California Court of Appeal has held that at least in cases such as this one where title was disparaged in a recorded instrument, attorney fees and costs necessary to clear title or remove the doubt case on it by defendant's falsehoods are, by themselves, sufficient pecuniary damages for purposes of a cause of action for slander of title. *Sumner Hill Homeowners' Assn., Inc. v. Rio Mesa Holdings, LLC*, 205 Cal.App.4th 999.

Plaintiff is subject to losing title to their property(s) because Defendants were cavalier with its compliance with the non-judicial foreclosure statutes, forcing him to bring this action to protect his rights as a borrower.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM- 16

**VIII. Defendants' Demurrer to Plaintiff's Cause of Action for Violations of California Civil Code Section 2923.5 and the FDCPA Should Be Overruled**

Plaintiff's complaint is to be taken as true for the purpose of ruling on the demurrer. *Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App. 4th 1020, 1034. Plaintiff's Complaint alleges the falsity of Defendant's purported notice under § 2923.5.

Plaintiff alleges that Defendants violated California Civil Code Section 2923.5 because it failed to contact Plaintiff, in person or by telephone, at least 30 days prior recording the Notice of Default recorded on or around November 9, 2011. And the statement contained in the Notice of Default recorded by Fidelity of compliance with Section 2923.5 stating that someone tried with due diligence to contact the borrowers is false because, although signed under oath, Defendants failed to exercise due diligence in attempting to contact Plaintiff as required by Section 2923.5, nor was Plaintiff ever contacted. And the Declaration was signed by Chris Bradford as Authorized Signor of Fidelity, a stranger to Plaintiff's Deed of Trust. Defendants' RFJN, Doc. 24-1, Ex. C. Defendants' recordation of the Notice of Default which did not comply with Section 2923.5 was thus unfair and unlawful.

Plaintiff further alleges that Defendants' failure to comply with the Notice and Contact requirements of Section 2923.5 renders the Notice of Default and all subsequent proceedings based on said Notice, including any subsequent Notice of Trustee's Sale, invalid and void. See *Mabry v. Superior Court* (2010) 185 Cal. App. 4th 208, 236-37 (Notice of Default which fails to comply with Section 2923.5 is invalid and a non-judicial foreclosure may only proceed if a new, valid Notice of Default is recorded).

The NOD also fails to comply with the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, ("FDCPA"). Defendants are debt collectors within the meaning of the FDCPA. See 15 U.S.C. § 1692a(6), *Birster v. American Home Mortgage Servicing, Inc.,* No. 11-13574-G, U.S. App. (11th Cir.) (unpublished). Defendants violated the FDCPA with actions pertaining to enforcement of the Note and Plaintiff's DOT with challenged debt collection conduct including

Section 2923.5 compliance which failed to include the FDCPA Mini Miranda Warning and FDCPA 30-day validation notice requirements. Nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants state that "This is an attempt to collect a debt. Any information will be used for that purpose" as required by the FDCPA. Nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants state that within 5 days of any initial communication with Plaintiff, Defendants must notify Plaintiffs in writing, of Plaintiff's debt validation rights. This notice of dispute rights is required by the FDCPA regardless of the method of the debt collector's initial communication, whether it was a phone call, a letter, or even a legal summons. The debt collector's debt validation notice should have included the amount of the debt, the name of the creditor to whom the debt was owed, that Plaintiff had 30 days to dispute the debt, notification that the Plaintiff had the right to have the verification mailed to Plaintiffs, and notification that Plaintiffs can request the name and address of the original creditor within 30 days. And nowhere within the Defendants correspondence or verbal communications regarding Section 2923.5 compliance, within the NOD, or otherwise, did Defendants inform Plaintiff of her aforementioned dispute rights under the FDCPA.

Therefore, Defendants violated the FDCPA and clouded title to Plaintiffs' property by recording the false and illegal NOD.

### IX.  Plaintiff Have Standing Under Federal Law (That is Not Time Barred) And Have Stated Sufficient Facts Under TILA

Plaintiff has sufficiently pled he claims under the Truth in Lending Act, ("TILA"), 15 U.S.C. § 1601, et.seq. in Plaintiff's Amended Complaint.

Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the legislature in approving this statute which was to fully inform home buyers of the pros and cons of adjustable

rate mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

Under TILA, any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices. *Ellis v. General Motors Acceptance Corp.,* 160 F.3d 703 (11th Cir., 1999)(consumers are not time barred from suing lender for TILA violations when the violations are concealed by misrepresentation that is not "apparent on the face" of the disclosure statement.)

### X.       Plaintiffs State Facts Sufficient to Constitute a RICO Violation

In *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992), the Court "held that a plaintiff may sue under § 1964(c) . . . if the alleged RICO violation was the proximate cause of the plaintiff's injury," *Anza*, slip op. at 1, which it distilled from § 1964(c)'s "by reason of" language, *id*. at 4. Abjuring a broad statutory interpretation "requir[ing] merely that the claimed violation was a 'but for' cause of the plaintiff's injury," the Court read § 1964(c) as demanding "some direct relation between the injury asserted and the injurious conduct alleged." Id. at 4-5 (quoting Holmes, 503 U.S. at 265- 268) (emphasis added).

Ultimately finding too great an "attenuation" between the claimed RICO § 1962(c) violation and injury in Anza, the Supreme Court reversed, explaining that the "proper referent of the proximate-cause analysis is an alleged practice of conducting National's business through a pattern of defrauding the State." *Id*. at 5-6.3 Stressing the need in a private RICO action to connect "plaintiff's harm and the claimed RICO violation," the Court held:

> To be sure, Ideal asserts it suffered its own harms when the Anzas failed to charge customers for the applicable sales tax. The cause of Ideal's asserted harms, however, is a set of actions (offering

lower prices) entirely distinct from the alleged RICO violation (defrauding the state).

*Id*. at 6 (emphasis added). Noting that a "RICO plaintiff cannot circumvent the proximate-cause requirement simply by claiming that the defendant's aim was to increase market share at a competitor's expense," *id*. at 9, the Supreme Court advised bench and bar:  When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.  *Anza v. Ideal Steel Supply Corp.*,No. 04-433, 547 U.S. __ (2006).

In the instant matter, Plaintiff's audit indicates Defendants causation of the continuing harm of slander of title and correlating causes of action stated herein as a result of the fraudulent use of robo-signers, breaches of Plaintiff's Deed of Trust and the PSA for the Penny Mac securitized trust, and breaches of California state and federal law.  The actions Plaintiff complains of herein and evidenced in Plaintiff's audit include:

1)      CitiMorgage's assertion of rights as Servicer without legal authority;

2)      Failing to evidence chain of title possession and indebtedness;

3)      Failing to properly substitute foreclosing trustee (Ex. B, p. 12);

4)      Interfering with Plaintiffs attempts to and ability to negotiate loan modification (Ex. B, pp. 13-14);

5)      Purporting to transfer beneficial interest without endorsement or assignment;

6)       Failing to identify the owner of the Note and Servicer of the Note with contact information on the NOD.

And Plaintiffs have alleged damages resulting therefrom in Plaintiff's Complaint including "pecuniary damages as a result of Defendants' breaches of Plaintiffs' Deed of Trust and the wrongful sale of Plaintiffs' Deed of Trust to the securitized trust because the false recorded documents disclose a claim of right, title or interest in the subject property which gives rise to a need for policy endorsements for title insurance, settlement of a claim shown on a title report, and/or a significant dissuasive factor for any prospective purchaser inspecting the

property for sale, and/or its disclosures, any and all of which factors negatively affected and continue to affect the purchase price and vendibility of the Subject Property in an amount to be proven at trial." Complaint, p. 27, ¶ 120.  Therefore, Defendants' demurrer to Plaintiff's cause of action for violation of 18 U.S.C. § 1962 should be overruled.

### XI.   Plaintiff States Facts Sufficient to Support a Cause of Action for Unfair and Deceptive Business Act Practices

Defendants also assert that Plaintiff's cause of action for unfair and deceptive acts and practices ("UDAP"), codified at California Code of Civil Procedure §§ 1750 – 1784 (the Consumer Legal Remedies Act) and the Unfair Business Practices Act, Cal. Bus. & Prof. Code §§ 17200 through 17594, must fail because Plaintiff has not alleged any violations due to Defendant being only a loan servicer.  UDAP is a derivative cause of action and Plaintiff's ability to pursue this cause of action depends on the success or failure of their substantive causes of action.  *See Tamburri*, 2011 WL 6294472 at *18.  However, as discussed above, Plaintiff has alleged sufficient facts to dispute whether JPMorgan acted only as a servicer.

Moreover, as discussed herein, Plaintiff has also alleged sufficient facts to support causes of action for a breach of contract, slander, wrongful foreclosure violations of Civil Code § 2923.5, and violations of TILA and RICO which serve as the necessary underlying unfair business practice for their Section 17200 claim.

Here, there was never any recording assigning a power of sale to the foreclosing entity on the Notice of Default recorded on November 9, 2011 as Document No. 2011-0243511 in the files of the Contra Costa County Recorder's Office by Fidelity

According to this Notice of Default, Fidelity purports to act as agent for the beneficiary.

However there is no valid, recorded document giving Defendant DBNTC, ownership of the beneficial interest under Plaintiff's Deed of Trust.  In the absence of such a document in the public chain of title, Defendants lack the power of sale pursuant to Section 2932.5.  Thus, any

attempted sale of Plaintiff's property on behalf of Defendant DBNTC or any other purported trustee would be invalid and wrongful.

Any foreclosure sale of the Subject Property on its behalf would be in violation of California Civil Code Section 2932.5 and therefore wrongful.

For the reasons stated above, there is a likelihood that Plaintiff will prevail on the merits of their wrongful foreclosure claim.  If Defendants are permitted to rely on void and wrongful, NOD to complete this foreclosure process by conducting a Trustee's sale and issuing a Trustee's Deed Upon Sale, Plaintiff will wrongfully lose their home.  Such injury is irreparable and cannot be adequately compensated by financial means.  Moreover, real property is considered unique in California, and monetary damages are deemed inadequate to compensate Plaintiff for the loss thereof.  *Stockton v. Newman*, 148 Cal. App. 2d 558, 564 (1957).

Therefore, the foreclosure is invalid, and Defendants' motion should be denied.

**XII.   Conclusion**

Plaintiff respectfully requests that the Court overrule the MOTION TO DISMISS PLAINTIFF'S COMPLAINT FOR FAILURE TO STATE A CLAIM and further respectfully requests that if the Court sustains the Motion to Dismiss, then the Court grant Plaintiff leave to amend the Complaint.

DATED: August 19, 2013                Respectfully submitted,


___/s/   *Megan Dailey*_____
Megan Dailey
Of Counsel
Yesk Law
70 Doray Dr., Suite 16
Pleasant Hill, CA 94523
Telephone: 925-849-5525
m.yesklaw@gmail.com
Attorney for Plaintiffs